**UNITED STATES of America, ex rel. Linda A. Lujan, Plaintiff–Appellant,**

v.

**HUGHES AIRCRAFT COMPANY, Defendant–Appellee.**

No. 96–56228.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1997.

Decided Dec. 11, 1998.

---

9. Defendant does not argue that admitting the evidence violated Fed.R.Evid. 403.

Daniel I. Davidson, Spiegel & McDarmid, Washington, D.C., for the plaintiff-appellant.

Mark R. Troy, Michael Rizzo, McKenna & Cuneo, L.L.P., Los Angeles, California, for the defendant-appellee.

Before: William C. Canby, Jr. and David R. Thompson, Circuit Judges, and Donald W. Molloy,* District Judge.

MOLLOY, District Judge:

Relator Linda A. Lujan brought *qui tam* and retaliation claims under the False Claims Act, 31 U.S.C.A. §§ 3729–3733 (West 1984 & Supp.1998) ("FCA"), against her former employer, Hughes Aircraft Company ("Hughes"). The *qui tam* provision of the FCA permits, in certain circumstances, suits by private parties on behalf of the United States against anyone submitting a false claim to the government. Lujan alleges that Hughes submitted fraudulent claims to the government during its participation as a defense subcontractor in the B2 bomber and other projects between 1982 and 1989. The district court dismissed both the *qui tam* claims for lack of subject matter jurisdiction and the retaliation claims as time-barred by the statute of limitations. Lujan appeals. We affirm in part and reverse in part the dismissal of the *qui tam* claims and affirm the dismissal of the retaliation claims.

## I

## BACKGROUND

### A. Factual Background

After being awarded a defense contract from the Air Force to construct the B–2 bomber, the Northrup Corporation awarded Hughes a "cost-plus" subcontract to develop the B–2's radar system. Several months later, Hughes was awarded other "fixed-price" contracts for developing radar systems for other aircraft, including the F–15 fighter aircraft. Because these contracts overlapped significantly, Hughes adopted "commonality agreements" that allowed it to allocate costs between the various contracts that were using common components.

Appellant Lujan was employed in Hughes' Radar Systems Group from 1982 to 1989. In early 1988, Lujan alleges, she began noticing that Hughes was engaging in fraudulent contracting practices by shifting costs from the fixed-price programs to the cost-plus programs. She reported these practices to her superiors at Hughes in February 1988, eventually discussing her concerns with Department of Defense representatives in June 1988.

* The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

Lujan alleges that, in response to her complaints, Hughes segregated her from her co-workers, ostracized and intimidated her, discriminated against her, and caused her physical and mental distress. In June 1989, Hughes fired Lujan. In February 1992, Lujan filed her first complaint, alleging both *qui tam* claims for Hughes' alleged fraud and retaliation claims for her termination.

During Lujan's tenure at Hughes, in January 1989, another Hughes employee, William J. Schumer, commenced a *qui tam* action against Hughes, alleging that Hughes had mischarged the government for certain radar development costs that should have been allocated to its fixed-price contracts instead of to the cost-plus B–2 contract. Schumer's case eventually made its way to the Supreme Court, which held in 1997 that Schumer's *qui tam* claims were jurisdictionally barred. *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997).

### B. Procedural Background of *Lujan*

This is the second appeal in this case. In the first appeal, we decided the district court had erred in imposing the sanction of automatic dismissal for Lujan's violation of the FCA requirement that a *qui tam* claim remain under seal for at least 60 days. *See United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 243 (9th Cir.1995). We held that the sanction of dismissal was unwarranted under the circumstances and remanded the case to district court. *Id.* at 245–48.

We asked the district court on remand to consider the issue of jurisdiction pursuant to the 1986 version of 31 U.S.C. § 3730(e)(4)(A), which bars any *qui tam* action based on allegations already "publicly disclosed" unless the relator is the "original source" of the information. *Id.* at 248. We noted that Lujan's complaint resembled the earlier *qui tam* action brought in 1989 by Hughes employee William Schumer. *Id.* (referring to *United States ex rel. Schumer v. Hughes*

*Aircraft Co.*, 63 F.3d 1512 (9th Cir.1995)).[1] We asked the district court as part of its jurisdictional determination to make factual findings on whether the allegations in Lujan's complaint were publicly disclosed by the civil proceedings in *Schumer*. 67 F.3d at 248.

Analyzing Lujan's allegations in her First Amended Complaint, the district court on remand determined that Lujan's allegations were "substantially similar" to Schumer's previous claims. Order, Mar. 19, 1996, at 5. The district court concluded that Lujan was trying "to create a meaningless distinction between her claims and Schumer's in order to establish jurisdiction" and that the difference between the Lujan and Schumer allegations was "microscopically fine." *Id.* at 5–6. Concluding that "[i]t is the harbinger, not the mimic, who is entitled to champion the government's interests," *id.*, the court dismissed Lujan's *qui tam* claims.

In April 1996, Lujan moved for reconsideration in the district court, arguing that she was an original source of the public disclosures in this case. The district court denied the motion. In June 1996, the district court granted Hughes' motion to dismiss Lujan's remaining retaliation claims as time barred by the state's one-year statute of limitations.

## II

### A. Standard of Review

We review de novo a district court's dismissal for lack of subject matter jurisdiction. *Ma v. Reno*, 114 F.3d 128, 130 (9th Cir.1997); *Evans v. Chater*, 110 F.3d 1480, 1481 (9th Cir.1997). However, a district court's factual findings on all jurisdictional issues must be accepted unless clearly erroneous. *Adler v. Federal Rep. of Nigeria*, 107 F.3d 720, 729 (9th Cir.1997). We will not disturb a district court's findings of fact unless we are left with a definite and firm conviction that a mistake has been made. *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 819 (9th Cir.1996).

---

1. As discussed above, the Supreme Court reviewed *Schumer* and held that the 1982 version of the FCA governed Schumer's claims and that Schumer's *qui tam* claims should have been dismissed. *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 117 S.Ct. 1871, 1879, 138 L.Ed.2d 135 (1997).

## B. Pre–1986 Conduct

■ The first question we must decide is whether the 1986 amendments to the FCA apply retroactively to Hughes' pre–1986 misconduct. This question leads us to the *Schumer* case. *Schumer* is important to Lujan's case not only because Schumer was a Hughes employee whose prior claims directly affect the status of Lujan's claims factually but also because the Supreme Court's interpretation of the FCA in *Schumer* controls this case.

Similar to the issue in the instant case, the issue in *Schumer* was whether the 1986 amendments to the FCA apply retroactively to pre–1986 conduct. *Schumer*, 117 S.Ct. at 1875. The distinction between the 1982 and 1986 versions of the FCA is significant because, as we noted when *Schumer* was before us, "[w]hereas the pre–1986 Act barred cases brought by *qui tam* plaintiffs when their allegations were 'based on evidence or information the Government had when the action was brought,' the 1986 amendments narrowed this bar to the more limited class of cases based on information previously disclosed to the public." *Schumer*, 63 F.3d at 1517 (internal citations omitted).

Concluding that Congress did not intend to apply the 1986 amendments retroactively, the Supreme Court held that the 1982 version of the FCA should be applied to any conduct alleged by Schumer that occurred prior to the 1986 version's effective date. *Schumer*, 117 S.Ct. at 1876. Because the government knew about the alleged misconduct before Schumer filed his claim, the Court held that the 1982 version of the FCA required the dismissal of Schumer's *qui tam* claims. *Id.* at 1879.

The Supreme Court in *Schumer* found it unnecessary to decide whether the relevant conduct for purposes of non-retroactivity was the act of Hughes in presenting a false claim, or the public disclosure of that fact. *See Schumer*, 117 S.Ct. at 1876 n. 4. In our case, we must decide that issue because it appears that some of the allegedly actionable conduct occurred before 1986 but was disclosed after 1986. We conclude that the crucial event for purposes of non-retroactivity is the alleged presentation by Hughes of a false claim, and not the public disclosure of that conduct. The considerations of fairness underlying the presumption against retroactivity militate in favor of that conclusion. The act upon which liability is founded is the presentation of a false claim to the government. It is that conduct for which the 1986 amendment "essentially creates a new cause of action" by eliminating a defense. *Schumer*, 117 S.Ct. at 1878. The unfairness of retroactivity would be to render Hughes subject to a cause of action that did not exist at the time it engaged in the conduct later made actionable. *Cf. Schumer*, 117 S.Ct. at 1876–78. We conclude, therefore, that the 1986 amendment applies to the presentation of false claims after its effective date. Accordingly, we apply the 1982 version of the FCA to all false claims allegedly presented by Hughes before the effective date of the 1986 amendments.

The 1982 version of the FCA provides that "the court shall dismiss an action … on discovering the action is based on evidence or information the Government had when the action was brought." 31 U.S.C.A. § 3730(b)(4) (West 1983). Here, Lujan freely admits that, because she was dissatisfied with Hughes' internal investigation of her complaints of serious mischarging to the B–2 bomber program, she "met with representatives of the department of Defense [in June of 1988] to inform them of [her] charges." Lujan Affidavit at 2. Lujan did not file her *qui tam* complaint until February 28, 1992, almost three years after her initial disclosures.

Thus, in considering Lujan's pre–1986 claims, we need not determine whether the government gained its information from Schumer's earlier allegations. Lujan's own admissions show that the government possessed the information that Lujan alleged in her complaint before she filed that complaint. Applying the 1982 version of the FCA, we therefore affirm the district court's dismissal of Lujan's *qui tam* claims that are based on Hughes' pre–1986 conduct.

## C. Post–1986 Conduct

### 1. The 1986 False Claims Act Standard

The next issue we must address is whether a different standard applies to the analysis of

Hughes' post–1986 conduct. The Supreme Court in *Schumer* specifically stated that the false claims alleged by Schumer were submitted to the government between 1982 and 1984, *Schumer*, 117 S.Ct. at 1875, and that Hughes' alleged false charges occurred before 1986. *Id.* at 1876 n. 4. By contrast, Lujan alleges that Hughes mischarged the government from 1982 through 1989. Because the district court in Lujan's case did not make specific findings as to the individual dates of the alleged presentation of false claims, we must assume that some of the alleged presentation of false claims occurred after 1986. Accordingly, we must determine whether Lujan's post–1986 allegations are jurisdictionally barred by the 1986 version of the FCA, which provides:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C.A. § 3730(e)(4)(A) (West Supp. 1998).[2]

■ In subsection (B), the statute next defines "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C.A. § 3730(e)(4)(B) (West Supp.1998). Thus, as the Supreme court noted in *Schumer*, the 1986 amendments allow *"qui tam* suits based on information in the Government's possession, except where the suit was based on information that had been publicly disclosed and was not brought by an original source of

the information." *Schumer*, 117 S.Ct. at 1876.

### 2. Public Disclosure by Schumer's Allegations

■ The first issue we must resolve in analyzing the jurisdictional status of Lujan's post–1986 allegations is whether Schumer's earlier allegations constituted "public disclosure" of the misconduct underlying Lujan's complaint. In other words, if Lujan's allegations are substantially similar to Schumer's, then the wrongdoing was publicly disclosed and Lujan's *qui tam* claims must be dismissed unless Lujan is an original source of the information. As set forth above, we review the district court's factual findings for clear error. *Adler*, 107 F.3d at 729. However, even if we were to review the district court's comparison of Lujan's and Schumer's complaints de novo (the district court conducted no factual inquiry beyond an examination of the complaints and the record), we would affirm the district court's determination that the allegations are substantially similar.

The record supports this conclusion. The subject matter of Schumer's action was four defense contracts between Hughes and the United States-the F–14D Program contract ("F14 contract"), the F–15 Radar Multistage Improvement Program Contract ("F15 contract"), the F–18 Radar Upgrade Program Contract ("F18 contract"), and the B–2 Special Programs Contract ("B–2 contract"). The B2 contract involved the design of an advanced radar system for that airplane. Hughes managed each of these contracts under "commonality agreements," which permit each program using a common component to share in some portion of its development and production costs.

Schumer alleged that Hughes used these commonality agreements to misbid, misallocate, and mischarge costs among the four contracts. For example, Schumer alleged that Hughes charged the development of a

---

**2.** Although section 3730(e)(4)(A) refers to "an action under this section based upon the public disclosure," a common sense reading has been accorded to these words. The action is based not on the disclosure, but on the underlying "information that had been publicly disclosed."

*Schumer*, 117 S.Ct. at 1876; *see United States ex rel. Biddle v. Board of Trustees of Stanford Univ.*, 147 F.3d 821, 826 (9th Cir.1998) ("[A] claim is 'based upon' public disclosure when the claim repeats allegations that have already been disclosed to the public").

radar signal processor to the F15 contract but then also charged these developments costs to the F14, F18, and B2 contracts.

Lujan's allegations also concern the contract to develop the B2 radar system. Lujan alleges that, between 1982 and at least 1989, Hughes routinely mischarged costs associated with the design and development of various B2 radar system contracts. She also alleges that Hughes mischarged costs on contracts involving the F14, F15, and F18 by means of the commonality agreements governing cost allocations among the various radar system programs.

The Schumer and Lujan allegations both involve cost-sharing transactions among and within the radar system programs on four aircraft. The two claims involve the same commonality agreements and the same radar program contracts. In sum, we agree with the district court that Lujan's allegations are substantially similar to those disclosed in the earlier *Schumer* action, thereby constituting "public disclosure" of Lujan's *qui tam* claims within the meaning of the 1986 version of the False Claims Act.

### 3. Lujan as an "Original Source"

■ However, even if Schumer's allegations are sufficiently similar to Lujan's to constitute public disclosure of Lujan's allegations, jurisdiction over Lujan's *qui tam* claims is not necessarily destroyed. As set forth above, public disclosure is fatal to jurisdiction only if Lujan is not an original source of the allegations. 31 U.S.C.A. § 3730(e)(4)(A) (West Supp.1998).

■ To qualify as an original source, "a relator must show that he or she has 'direct and independent knowledge of the information on which the allegations are based,' 'voluntarily provided the information to the government before filing his or her *qui tam* action,' and 'had a hand in the public disclosure of allegations that are a part of . . . [the] suit.'" *United States ex rel. Devlin v. State of California,* 84 F.3d 358, 360 n. 3 (9th Cir.1996) (quoting *Wang v. FMC Corp.,* 975 F.2d 1412, 1418 (9th Cir.1992)).

We have already noted that Lujan voluntarily provided the information to the government before filing her suit: She met and discussed her allegations with Department of Defense personnel on June 6, 1998. As the district court noted, the parties do not dispute that Lujan has direct and independent knowledge of her allegations. Order Dismissing Relator's *Qui Tam* Counts, at 3 n. 2. These two factors alone, however, do not establish original source status.

In *Wang,* we held that, "to bring a *qui tam* suit based on allegations already in the public domain . . . a plaintiff [must] have played a part in disclosing those allegations." *Wang,* 975 F.2d at 1414. Wang had direct knowledge in May 1983 of possible fraud by his employer, FMC Corporation, involving a transmission problem on the Bradley rocket launcher. FMC fired Wang in December 1986, and Wang filed his False Claims Act case in December 1987. *Id.* at 1417–18. However, before he filed suit, various newspapers reported the Bradley's transmission problems. *Id.* at 1417. We then observed that "Wang is now revealing what is already publicly known." *Id.* at 1418. Wang had known of the Bradley problems since 1983, yet he "sat quietly in the shadows and breathed not a word about them until he was fired," *id.* at 1419–20, while "some other conscientious or enterprising person bravely brought the transmission problems to the attention of the media and Army," *id.* at 1420. Because Wang had merely republished an allegation that had already been publicly disclosed, we concluded that Wang was not an original source. *Id.* at 1419.

Paraphrasing *Wang,* the district court in Lujan's case concluded that Lujan had merely "echoed" Schumer's allegations and was, therefore, not an original source. We disagree with the district court's application of *Wang* to the facts of this case. Like Wang, Lujan has direct and independent knowledge of the information underlying her allegations. But, unlike Wang, she did not remain silent and wait until after she was fired to take that information to the government. Instead, she took her allegations to the government in June 1988, before Schumer filed his action in 1989 and well before Lujan filed her original complaint in 1992.

■ In *Wang*, we noted that Congress's intent in protecting original sources was to "bring the wrongdoing to light" at the earliest possible opportunity. *Id.* at 1419. Crucial to the instant opinion, however, we stated the following in *Wang:*

> It is important to note that under the rule we adopt today, *all* those who "directly or indirectly" disclose an allegation might qualify as its original source. Anyone who helped to report the allegation to either the government or the media would have "indirectly" helped to publicly disclose it.

*Id.* at 1419 (quoting *United States ex rel. Dick v. Long Island Lighting Co.,* 912 F.2d 13, 18 (2d Cir.1990)).

Lujan disclosed her allegations to the government before similar allegations were publicly disclosed by Schumer's lawsuit. Under the reasoning of *Wang*, Lujan "indirectly" publicly disclosed her allegations of fraud. She also acted promptly to remedy the perceived wrongdoing. Because the district court has subject matter jurisdiction under the "original source" exception to the 1986 FCA, we reverse the district court's dismissal of Lujan's post–1986 *qui tam* claims.

## III

The Retaliation Claim

■ Lujan's complaint also includes a retaliation claim under another provision of the False Claims Act.[3] She alleges Hughes ostracized, harassed, and intimidated her because she reported her perceived discrepancies in Hughes' contracting and accounting procedures. The district court dismissed these claims as time-barred by the applicable one-year state statute of limitations. On appeal, Lujan argues that the district court should have applied the False Claim Act's six-year statute of limitations to her retaliation claims. We review de novo the district court's determination of the applicable statute of limitations, *Naas v. Stolman,* 130 F.3d 892 (9th Cir.1997), and we affirm.

The relevant section of the False Claims Act provides: "A civil action under section 3730 may not be brought ... more than 6 years after the date *on which the violation of section 3729 is committed.* ..." 31 U.S.C.A. § 3731(b)(1) (West Supp.1998) (emphasis added). Lujan urges us to read the statute plainly and to apply a six-year statute of limitations to all actions under section 3730, including her retaliation claim even though retaliation does not constitute a violation of section 3729. The answer is not so simple.[4]

The False Claims Amendment Act of 1986, Pub.L. 99–562, 100 Stat. 3153, added the retaliation claim provisions at section 3730(h) and the statute of limitations for false claims provision at section 3731(b). Before 1986, section 3731(b) simply said that "[a] civil action under section 3730 of this title must be brought within 6 years from the date the violation is committed." 31 U.S.C.A. § 3731(b) (West 1983). By implication, all claims had a six-year window of opportunity under the old law.

If Congress had wanted to retain a six-year statute for all actions under section 3730, including retaliation claims, it would have left the pre–1986 language of section 3731(b) intact when it enacted the 1986 amendments to the FCA. Instead, Congress, while adding a provision for retaliation claims

---

3. The retaliation provision of the FCA states:

(h) Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

31 U.S.C.A. § 3730(h) (West Supp.1998).

4. In rejecting the applicability of the six-year statute to retaliation claims, we disagree with the Seventh Circuit in *Neal v. Honeywell, Inc.,* 33 F.3d 860, 865 (7th Cir.1994) (applying six-year statute for violation of section 3729 to all claims under section 3730).

under 3730(h), narrowed the application of the six-year statute of limitations to violations of section 3729. Section 3729 specifically and strictly addresses false claims, not retaliation claims.

That Congress was specifically concerned with false claims in its 1986 amendments to the statute of limitations is further illustrated by its addition of section 3731(b)(2). This section provides an alternative to the six-year statute of limitations for false claims, namely a period of no more than three years after material facts should have been known by the relevant government official, but never longer than ten years after the violation was committed. 31 U.S.C.A. 3731(b) (West Supp. 1998). The legislative history to this section indicates that this change was enacted to "ensure the Government's rights are not lost through a wrongdoer's successful deception," because "fraud is, by nature, deceptive...." S.Rep. No. 99–345, at 15 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5280.

The same rationale is inapposite to a private claim for retaliation. There is nothing covert or deceptive about retaliation-the victim feels its sting immediately. In the absence of some meaningful indication to the contrary, we must therefore presume that, in amending section 3731(b) so that the limitation runs only from the date of a violation of section 3729, Congress did not intend that the statute apply to section 3730(h).

Congress created the retaliation claim but provided no specific statute of limitations for such claims. The Supreme court has held that when Congress does not supply an express statute of limitations governing a federal cause of action, then "Congress intended that the courts apply the most closely analogous statute of limitations under state law." *Reed v. United Transport Union*, 488 U.S. 319, 323, 109 S.Ct. 621, 102 L.Ed.2d 665, (1989).

█ We agree with the district court that the most analogous statute of limitations under California law is the one-year statute applicable to wrongful termination in viola-

tion of California public policy. *See* Cal.Civ. Proc.Code § 340(3) (West Supp.1998). Accordingly, we affirm the district court's dismissal of Lujan's retaliation claim as time-barred.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**