(Slip Opinion)   OCTOBER TERM, 2004   1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## GRAHAM COUNTY SOIL & WATER CONSERVATION DISTRICT ET AL. *v.* UNITED STATES EX REL. WILSON

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 04–169.   Argued April 20, 2005—Decided June 20, 2005

The False Claims Act (FCA) prohibits a person from making false or fraudulent claims for payment to the United States. 31 U. S. C. §3729(a). That prohibition may be enforced in suits filed by the Attorney General, §3730(a), and in *qui tam* actions brought by private individuals in the Government's name, §3730(b)(1). A 1986 amendment to the FCA created a private cause of action for an individual retaliated against by his employer for assisting an FCA investigation or proceeding, §3730(h), and revised the FCA's statute of limitations, §3731(b). Section 3731(b) provides that "[a] civil action under section 3730 may not be brought . . . more than 6 years after the date on which the violation of section 3729 is committed." In 2001, respondent Wilson brought an FCA *qui tam* action against petitioners, along with an FCA retaliation claim. Petitioner Graham County Soil and Water Conservation District employed Wilson as a secretary. Wilson alleged that petitioner county officials retaliated against her for alerting federal officials to the purported fraud and for cooperating with the ensuing investigation, ultimately forcing her 1997 resignation from the District. Petitioners successfully moved to dismiss the retaliation claim as untimely, on the ground that North Carolina's 3-year statute of limitations governed Wilson's FCA action and barred it. Reversing, the Fourth Circuit found it unnecessary to borrow a state limitations period because one was supplied by §3731(b)(1).

*Held:* Section 3731(b)(1)'s limitations period does not govern §3730(h) retaliation actions. Instead, the most closely analogous state statute of limitations applies. Pp. 4–13.

   (a) To determine the applicable statute of limitations for a cause of

action created by federal statute, this Court asks first whether the statute expressly supplies a limitations period. If not, the most closely analogous state limitations period applies. Pp. 4–5.

(b) Section 3730(h) is a subsection of §3730, but §3731(b)(1) is nonetheless ambiguous about whether a §3730(h) retaliation action is "a civil action under section 3730" as that phrase is used in §3731(b)(1). Another reasonable reading is that §3731(b)(1)'s limitations period applies only to §§3730(a) and (b) actions. Section 3731(b)(1) starts the limitations period running on "the date on which the violation of section 3729 is committed," that is, on the date the false claim was actually submitted. That language casts doubt on whether §3731(b)(1) specifies a limitations period for retaliation actions. For even a well-pleaded retaliation complaint need not allege that the defendant submitted a false claim, leaving the limitations period without a starting point if §3731(b)(1) is applicable. By contrast, the section naturally applies to well-pleaded §§3370(a) and (b) actions. Those actions require a plaintiff to plead that the defendant submitted a false claim and therefore necessarily specify when §3731(b)(1)'s time limit begins. At a minimum this anomaly shows that §3731(b)(1) is ambiguous about whether "action under section 3730" means all actions arising under that section. Pp. 5–7.

(c) Two considerations show that the better way to resolve this ambiguity is to read the 6-year period to govern only §§3370(a) and (b) actions. First, the very next subsection, §3730(c), uses the similarly unqualified phrase "action brought under section 3730" to refer only to §§3370(a) and (b) actions. Second, reading §3731(b)(1) to apply only to those actions is in keeping with the default rule that Congress generally drafts statutes of limitations to begin when the plaintiff has a complete and present cause of action. Where, as here, there are two plausible constructions, this Court should adopt the construction that starts the time limit running when the cause of action (here retaliation) accrues. This approach resolves §3731(b)(1)'s ambiguity in petitioners' favor. Reading §3731(b)(1) to exclude retaliation actions will generally start the limitations period running when the cause of action accrues, for the likely analogous state statutes virtually all start when the retaliatory action occurs. However, under the reading favored by Wilson and the Government, the limitations period would begin at best on the date an actual or suspected FCA violation occurred, which would precede the retaliatory conduct. Pp. 7–12.

(d) The Court of Appeals should determine in the first instance the appropriate state statute of limitations to borrow. Pp. 12–13.

367 F. 3d 245, reversed and remanded.

THOMAS, J., delivered the opinion of the Court, in which REHNQUIST,

Syllabus

C. J., and O'CONNOR, SCALIA, and KENNEDY, JJ., joined, and in which SOUTER, J., joined as to all but n. 2. STEVENS, J., filed an opinion concurring in the judgment. BREYER, J., filed a dissenting opinion, in which GINSBURG, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 04–169

GRAHAM COUNTY SOIL & WATER CONSERVATION DISTRICT, ET AL., PETITIONERS *v.* UNITED STATES EX REL. KAREN T. WILSON

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[June 20, 2005]

JUSTICE THOMAS delivered the opinion of the Court.*

This case presents the question whether the 6-year statute of limitations in the False Claims Act (FCA), see 31 U. S. C. §3731(b)(1), governs FCA civil actions for retaliation, see §3730(h). We hold that it does not and therefore conclude that the most closely analogous state limitations period applies.

I

The FCA prohibits any person from making false or fraudulent claims for payment to the United States. §3729(a). Persons who do so are liable for civil penalties of up to $10,000 per claim and treble damages. *Ibid.* The Act sets forth two principal enforcement mechanisms for policing this proscription. First, the Attorney General may sue to remedy violations of §3729. §3730(a). Second, private individuals may bring *qui tam* actions in the Government's name for §3729 violations. §3730(b)(1); see *Vermont Agency of Natural Resources* v. *United States ex rel.*

———————

*JUSTICE SOUTER joins all but footnote 2 of this opinion.

*Stevens,* 529 U. S. 765, 769–772 (2000). The *qui tam* relator must give the Government notice of the action, and the Government is entitled to intervene in the suit. §3730(b)(2). The relator receives up to 30 percent of the proceeds of the action, in addition to attorney's fees and costs. §§3730(d)(1), (2).

The 1986 amendments to the FCA created a third enforcement mechanism: a private cause of action for an individual retaliated against by his employer for assisting an FCA investigation or proceeding. §3730(h). Section 3730(h) provides in relevant part that

> "[a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole."

Remedies for retaliation include reinstatement, two times the amount of backpay plus interest, special damages, litigation costs, and attorney's fees. *Ibid.*

The 1986 amendments also revised the language of the 6-year statute of limitations applicable to FCA actions. The previous version of the statute provided that "[a] civil action under section 3730 of this title must be brought within 6 years from the date the violation is committed." §3731(b) (1982 ed.). The 1986 amendments revised this provision to read:

> "(b) A civil action under section 3730 may not be brought—
> "(1) more than 6 years after the date on which the violation of section 3729 is committed, or

"(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed . . . ." §3731.

In January 2001, respondent Karen T. Wilson brought an FCA *qui tam* and retaliation action against petitioners. Petitioners Graham County Soil and Water Conservation District and Cherokee County Soil and Water Conservation District are special-purpose local government entities; the other petitioners are various local and federal officials. Graham County District employed Wilson as a secretary. Wilson alleged that petitioners made numerous false claims for payment to the United States in connection with a federal disaster relief program, the Emergency Watershed Protection Program, App. 17–20, and in connection with agricultural programs administered by North Carolina but funded by the Federal Government, *id.,* at 17–24.

Wilson contended, in addition, that Graham County District officials retaliated against her for aiding federal officials in their investigation of these false claims. *Id.,* at 25–30. Wilson alerted federal officials to petitioners' suspected fraudulent activities in December 1995 and cooperated with the ensuing investigation. *Id.,* at 26–27. Because of her cooperation, the complaint alleged, Graham County District officials repeatedly harassed her from 1996 to 1997, eventually inducing her to resign in March 1997. *Id.,* at 28–30.

Petitioners successfully moved to dismiss Wilson's retaliation action as untimely. They argued that the 6-year limitations period provided in §3731(b)(1) did not apply to Wilson's retaliation action. Absent an applicable federal

limitations period, they asked the District Court to borrow
North Carolina's 3-year statute of limitations for retalia-
tory-discharge actions. The District Court agreed and
dismissed the retaliation claim, since Wilson filed it more
than three years after her March 1997 discharge. App. to
Pet. for Cert. 67a–70a. The court certified that ruling for
interlocutory appeal. 224 F. Supp. 2d 1042, 1050–1051
(WDNC 2002).

On interlocutory appeal, a divided panel of the Court of
Appeals for the Fourth Circuit reversed. In the majority's
view, the plain language of §3731(b)(1) supplies a limita-
tions period for retaliation actions, making it unnecessary
to borrow one from North Carolina law. The court rea-
soned that §3731(b)(1) governs §3730(h) retaliation ac-
tions, because it applies its 6-year limitations period to
"[a] civil action under section 3730." 367 F. 3d 245, 251
(2004) (brackets in original).

We granted certiorari to resolve a disagreement among
the Courts of Appeals regarding whether §3731(b)(1)'s 6-
year statute of limitations applies to §3730(h) retaliation
actions or whether, instead, the most closely analogous
state limitations period governs. 543 U. S. ___ (2005).
Compare *Neal* v. *Honeywell Inc.*, 33 F. 3d 860, 865–866
(CA7 1994) (holding that FCA 6-year period applies), with
*United States ex rel. Lujan* v. *Hughes Aircraft Co.*, 162
F. 3d 1027, 1034–1035 (CA9 1998) (holding that most
closely analogous state limitations period governs).

## II

To determine the applicable statute of limitations for a
cause of action created by a federal statute, we first ask
whether the statute expressly supplies a limitations pe-
riod. If it does not, we generally "borrow" the most closely
analogous state limitations period. See *North Star Steel
Co.* v. *Thomas,* 515 U. S. 29, 33–34 (1995); *Reed* v. *Transpor-
tation Union,* 488 U. S. 319, 324 (1989); *Agency Holding*

*Corp.* v. *Malley-Duff & Associates, Inc.,* 483 U. S. 143, 157–165 (1987) (SCALIA, J., concurring in judgment) (tracing history of borrowing state limitations periods). In the rare case, we have even borrowed analogous federal limitations periods in the absence of an expressly applicable one, see, *e.g., id.,* at 150–157, but no party points to a reason why we should do so here, and we can think of none. The only arguably applicable express statute of limitations is the 6-year limit set forth in §3731(b)(1). The question, then, is whether §3731(b)(1) applies by its terms to retaliation actions under §3730(h); if it does not, our cases dictate that the most closely analogous state limitations period applies.

Under §3731(b)(1), "[a] civil action under section 3730 may not be brought . . . more than 6 years after the date on which the violation of section 3729 is committed." Following the Court of Appeals' lead and supported by the United States appearing as *amicus curiae*, Wilson argues that this language unambiguously applies to FCA retaliation actions. She points out that §3731(b)(1) applies a 6-year limitations period to "a civil action under section 3730," and that §3730(h) actions arise under §3730; hence, they claim, the 6-year period governs §3730(h) actions. See *Neal, supra,* at 865–866 (arguing same). We think the statute is more complex than this argument supposes. Statutory language has meaning only in context, see, *e.g., Leocal* v. *Ashcroft,* 543 U. S. \_\_\_, \_\_\_ (2004) (slip op., at 7), and §3731(b)(1), read in its proper context, does not govern §3730(h) actions for retaliation.

Section 3731(b)(1) is ambiguous, rather than clear, about whether a §3730(h) retaliation action is "a civil action under section 3730." Another reasonable reading is that it applies only to actions arising under §§3730(a) and (b), not to §3730(h) retaliation actions. That reading is suggested by the language in §3731(b)(1) tying the start of the time limit to "the date on which the violation of section 3729 is committed." In other words, the time limit begins

to run on the date the defendant submitted a false claim for payment. See *supra*, at 1. This language casts doubt on whether §3731(b)(1) specifies a limitations period for retaliation actions. For even a well-pleaded retaliation complaint need not allege that the defendant submitted a false claim, leaving the limitations period without a starting point if §3731(b)(1) is applicable. A retaliation plaintiff, instead, need prove only that the defendant retaliated against him for engaging in "lawful acts done . . . in furtherance of" an FCA "action filed or to be filed," §3730(h), language that protects an employee's conduct even if the target of an investigation or action to be filed was innocent.[1] Applying §3731(b)(1) to FCA retaliation actions, then, sits uneasily with §3731(b)(1)'s language, which assumes that well-pleaded "action[s] under section 3730" to which it is applicable include a "violation of section 3729" certain from which to start the time running. Section 3731(b)(1), by contrast, naturally applies to well-pleaded §§3730(a) and (b) actions. They require the plaintiff to plead that the defendant submitted a false claim for payment, and therefore necessarily specify when §3731(b)(1)'s time limit begins. This textual anomaly, at a minimum, shows that

––––––––––

[1] See *United States ex rel. Karvelas* v. *Melrose-Wakefield Hospital*, 360 F. 3d 220, 236 (CA1 2004) (holding that protected conduct is "conduct that reasonably could lead to a viable FCA action"); *United States ex rel. Yesudian* v. *Howard Univ.*, 153 F. 3d 731, 740 (CADC 1998) (same); *Childree* v. *UAP/GA AG CHEM, Inc.*, 92 F. 3d 1140, 1146 (CA11 1996) (holding that disclosure to employer of possible FCA violation protected conduct where litigation is a "distinct possibility" at the time of the disclosure); *Fanslow* v. *Chicago Mfg. Center, Inc.*, 384 F. 3d 469, 480 (CA7 2004) (protected conduct is where employee had reasonable, good-faith belief that the employer is committing fraud against the United States); *Wilkins* v. *St. Louis Housing Auth.*, 314 F. 3d 927, 933 (CA8 2002) (same); *Moore* v. *California Inst. of Tech. Jet Propulsion Lab.*, 275 F. 3d 838, 845–846 (CA9 2002) (same). We endorse none of these formulations; we note only that all of them have properly recognized that proving a violation of §3729 is not an element of a §3730(h) cause of action.

§3731(b)(1) is ambiguous about whether "action under section 3730" means all actions under §3730, or only §§3730(a) and (b) actions.

Wilson and the United States dispute that the statute contains this anomaly, and instead urge that it clearly applies by its terms to all §3730 actions. They point out that every §3730(h) action requires the plaintiff to prove that he engaged in protected conduct related to at least a *suspected* violation of §3729, and argue that §3731(b)(1)'s limitations period simply begins to run on the date of the suspected violation. Assuming, without deciding, that §3730(h) retaliation actions have as an element a suspected violation of §3729, their interpretation indeed removes the anomaly, but only at the cost of reading into the statute the word "suspected" before the phrase "violation of section 3729." Section 3731(b)(1) speaks of "violation[s] of section 3729"—*actual*, not *suspected*, ones. Wilson and the United States answer that this argument proves too much, because even §§3730(a) and (b) actions involve only "suspected" violations of §3729 at the pleading stage of litigation; but this response misses the point. Every §3730(a) or (b) plaintiff who states or proves a valid claim for relief must allege or prove an actual violation of §3729; retaliation plaintiffs need only allege or prove a suspected violation of §3729 (or so we are willing to assume). The point is that §3731(b)(1)'s language applies naturally to all successfully pleaded or proved retaliation actions only if one reads "suspected" into its terms, as the dissent essentially concedes. See *post*, at 4 (opinion of BREYER, J.).

Section §3731(b)(1)'s literal text, then, is ambiguous. Wilson and the Government ask us to read it as if it said "the [suspected or actual] violation of section 3729." Petitioners ask us to read §3731(b) as if it said "civil action under section 3730[(a) or (b)]."

Two considerations convince us that the better way to resolve this ambiguity is to read the 6-year period to gov-

ern only §§3730(a) and (b) actions, and not §3730(h) re-
taliation actions. First, the very next subsection of the
statute, §3731(c), also uses the similarly unqualified
phrase "action brought under section 3730" to refer only to
§§3730(a) and (b) actions. Section 3731(c) provides that
"[i]n any action brought under section 3730, the United
States shall be required to prove all essential elements of
the cause of action, including damages, by a preponder-
ance of the evidence." As Wilson and the United States
concede, the context of this provision implies that the
phrase "any action brought under section 3730" is limited
to §3730(a) actions brought by the United States and
§3730(b) actions in which the United States intervenes as
a party, as those are the types of §3730 actions in which
the United States necessarily participates. Otherwise, the
United States would be "required to prove all essential
elements of the cause of action," §3731(c), in all §3730
actions, regardless of whether it participated in the action
(a consequence the dissent implicitly embraces by claiming
that "any action brought under section 3730" in §3731(c)
means all §3730 actions, see *post*, at 2 (opinion of BREYER,
J.)). This implicit limitation of the phrase "action under
section 3730" shows that Congress used the term "action
under section 3730" imprecisely in §3731 and, in particu-
lar, that Congress sometimes used the term to refer only
to a subset of §3730 actions. It is reasonable to read the
same language in §3731(b)(1) to be likewise limited.

Second, reading §3731(b)(1) to apply only to §§3730(a)
and (b) actions is in keeping with the default rule that
Congress generally drafts statutes of limitations to begin
when the cause of action accrues. We have repeatedly
recognized that Congress legislates against the "standard
rule that the limitations period commences when the
plaintiff has a complete and present cause of action." *Bay
Area Laundry and Dry Cleaning Pension Trust Fund* v.
*Ferbar Corp. of Cal.,* 522 U. S. 192, 201 (1997) (internal

quotation marks omitted); see also *Johnson* v. *United States,* 544 U. S. \_\_\_, \_\_\_ (2005) (slip op., at 9) (calling it "highly doubtful" that Congress intended a time limit on pursuing a claim to expire before the claim arose); *Reiter* v. *Cooper,* 507 U. S. 258, 267 (1993) (declining to countenance the "odd result" that a federal cause of action and statute of limitations arise at different times "absen[t] . . . any such indication in the statute"); *TRW Inc.* v. *Andrews,* 534 U. S. 19, 37 (2001) (SCALIA, J., concurring in judgment) ("Absent other indication, a statute of limitations begins to run at the time the plaintiff has the right to apply to the court for relief" (internal quotation marks omitted)). Therefore, where, as the case is here, there are two plausible constructions of a statute of limitations, we should adopt the construction that starts the time limit running when the cause of action (here retaliation) accrues.[2]

This approach resolves the ambiguity in §3731(b)(1) in petitioners' favor. On the one hand, reading §3731(b)(1) to exclude retaliation actions will generally start the limitations period running when the cause of action accrues. If §3731(b)(1) excludes retaliation actions, then no express time limit applies to §3730(h) actions, and we borrow the most closely analogous state time limit absent an ex-

---

[2] JUSTICE STEVENS, we believe, misapplies this interpretive rule. *Post,* p. 1 (opinion concurring in judgment). He argues that §3731(b)(1) does not govern §3730(h) actions because "it is so unlikely that a legislature would actually intend" to start the statute of limitations running before the cause of action accrues that he "would presume that the anomaly was the product of a drafting error" regardless of whether the text is ambiguous. *Dodd* v. *United States*, *ante*, at \_\_, n. 1 (STEVENS, J., dissenting). This is not the proper analysis. Section 3731(b)(1) is ambiguous because its text, literally read, admits of two plausible interpretations. *Supra*, at 5–7. We apply the rule that Congress generally drafts statutes of limitations to begin when the cause of action accrues to resolve that ambiguity, not to create it in the first instance.

pressly applicable one. See *supra*, at 4–5. The likely
analogous state statutes of limitations virtually all start to
run when the cause of action accrues—in retaliation ac-
tions, when the retaliatory action occurs.[3]

———————

[3] Ala. Code §6–2–38 (West 1993) (catchall for tort actions not other-
wise enumerated); §36–26A–4(a) (West 2001) (retaliation action for
whistle-blowers); Alaska Stat. §09.10.070 (Lexis 2004) (catchall); Ariz.
Rev. Stat. Ann. §12–541 (West 2003) (wrongful termination); Ark. Code
Ann. §16–56–115 (Lexis 1987) (catchall); §21–1–604 (Lexis 2004)
(retaliation action for whistle-blowers); Cal. Civ. Proc. Code Ann.
§335.1 (West Supp. 2005) (personal injuries); §343 (West 1982) (catch-
all); Colo. Rev. Stat. §13–80–102(1)(g) (Lexis 2004) (catchall); Conn.
Gen. Stat. §§52–577, 31–51m (2005) (catchall for tort actions; retalia-
tion action for whistle-blowers); Del. Code Ann., Tit. 10, §8119 (Lexis
1999) (personal injuries); Tit. 29, §5115 (Lexis 2003) (retaliation action
for whistle-blowers); D. C. Code §12–301(8) (West Supp. 2004) (catch-
all); Fla. Stat. §§112.3187(8)(a), 448.103 (2003) (whistle-blower actions);
Ga. Code Ann. §9–3–33 (Lexis 1982) (personal injuries); Haw. Rev.
Stat. §378–63(a) (Supp. 2004) (retaliation action for whistle-blowers);
Idaho Code §§5–224, 6–2105(2) (Lexis 1998) (catchall; retaliation action
for whistle-blowers); Ill. Comp. Stat. Ann., ch. 735, §5/13–202 (West
2003) (personal injuries); Ind. Code §34–11–2–4 (2004) (personal
injuries); Iowa Code §614.1 (2003) (personal injuries); Kan. Stat. Ann.
§§60–513, 75–2973(h) (Supp. 2003) (catchall; retaliation action for
whistle-blowers); Ky. Rev. Stat. Ann. §413.120(7) (Lexis Supp. 2004)
(catchall); §61.103(2) (Lexis 2004) (retaliation action for whistle-
blowers); La. Civ. Code Ann., Art. 3492 (West 1994) ("[d]elictual ac-
tions"; starts running on day injury or damage sustained, which is
when the cause of action generally accrues for retaliatory actions); Me.
Rev. Stat. Ann., Tit. 14, §752 (West 1980) (catchall); Md. Cts. & Jud.
Proc. Code Ann. §5–101 (Lexis 2002) (catchall for civil actions at law);
Mass. Gen. Laws, ch. 260, §2A, ch. 149, §185(d) (West 2004) (catchall
for tort actions for personal injuries; retaliation action for whistle-
blowers); Mich. Comp. Laws Ann. §15.363(1) (West 2004) (retaliation
action for whistle-blowers); Minn. Stat. §541.07 (2004) (personal inju-
ries); Miss. Code. Ann. §15–1–49 (Lexis 2003) (catchall); Mo. Rev. Stat.
§516.120 (2000) (catchall); Mont. Code Ann. §39–2–911(1) (2003)
(wrongful discharge); Neb. Rev. Stat. §§25–207, 25–212 (1995) (catch-
all); Nev. Rev. Stat. §11.190.4(e) (2003) (personal injuries); N. H. Rev.
Stat. Ann. §508:4 (West 1997) (personal actions other than slander or
libel); N. J. Stat. Ann. §§2A:14–1, 34:19–5 (West 2000) (catchall; re-
taliation action for whistle-blowers); §2A:14–2(a) (West Supp. 2005)

Opinion of the Court

The interpretation favored by Wilson and the Government, on the other hand, is in tension with this rule of construction. Under their reading, the statute of limitations for FCA retaliation actions begins to run, at best, on the date the actual or suspected FCA violation occurred.

_____

(personal injuries); N. M. Stat. Ann. §37–1–4 (1990) (catchall); N. Y. Civ. Prac. Law Ann. §215.4 (West 2003) ("action to enforce" a statute "given wholly or partly to any person who will prosecute"); N. Y. Lab. Law Ann. §740.4(a) (West 2002) (retaliation action for whistle-blowers); N. C. Gen. Stat. §§1–52, 126–86 (Lexis 2003) (catchall; retaliation action for whistle-blowers); N. D. Cent. Code §28–01–16 (Lexis 1991) (catchall); §34–01–20.3 (Lexis 2004) (retaliation actions for whistle-blowers); Ohio Rev. Code Ann. §2305.09 (Lexis Supp. 2003) (catchall for torts); §4113.52(D) (Lexis 2001) (retaliation action for whistle-blowers); Okla. Stat. Ann., Tit. 12, §95 (West Supp. 2005) (catchall); Ore. Rev. Stat. §12.110(1) (2003) (catchall); 42 Pa. Cons. Stat. §5524(7) (2002) (catchall); Pa. Stat. Ann., Tit. 43, §1424(a) (Purdon 1991) (retaliation action for whistle-blowers); R. I. Gen. Laws §9–1–14(a) (Lexis 1997) (injuries to the person); §28–50–4 (Lexis 2003) (retaliation action for whistle-blowers); S. C. Code Ann. §15–3–530 (West 2005) (catchall); §8–27–30(B) (West Supp. 2004) (retaliation action for whistle-blowers); S. D. Codified Laws §15–2–14(3) (West 2004) (action for personal injury); Tenn. Code Ann. §28–3–104(a)(1) (Lexis 2000) (personal injuries); Tex. Civ. Prac. & Rem. Code Ann. §16.003 (West 2002) (personal injuries); Tex. Govt. Code Ann. §554.005 (West 2004) (retaliation action for whistle-blowers); Utah Code Ann. §§78–12–29(1), (2) (Lexis 2002) (liability created by statute of foreign state; liability created by statute); §67–21–4(2) (Lexis 2004) (retaliation action for whistle-blowers); Vt. Stat. Ann., Tit. 12, §511 (Lexis 2002) (catchall); Va. Code Ann. §§8.01–243(A), 8.01–248 (Lexis 2000) (personal injuries; catchall); Wash. Rev. Code §4.16.080(2) (2004) (catchall for injuries to person); W. Va. Code §55–2–12 (Lexis 2000) (catchall); §6C–1–4(a) (Lexis 2003) (retaliation action for whistle-blowers); Wis. Stat. §893.57 (2003–2004) (intentional torts); Wyo. Stat. §§1–3–105(a)(iv)(C), 9–11–103(c) (2003) (catchall; retaliation action for whistle-blowers). But see Vt. Stat. Ann., Tit. 12, §512 (Lexis 2002) (personal injury statute of limitations starts on the date of the discovery of the injury); D. C. Code §1–615.54 (West 2001) (whistle-blower action may be brought within one year of the time the employee learns of the retaliation). We stress that these are only the likely candidates for analogous state statutes of limitations; it may well not be an exhaustive or authoritative list of the possibilities.

Because that date will precede the retaliatory conduct, their reading starts the time limit running before the retaliation action accrues. Even more oddly, their reading allows a retaliation action to be time barred before it ever accrues—for example, if the employer discovers more than six years after the suspected violation of §3729 that an employee aided in investigating that fraud, then retaliates. As we have discussed, §3731(b)(1)'s text permits a construction that avoids these counterintuitive results—that "civil action under section 3730" means only those civil actions under §3730 that have as an element a "violation of section 3729," that is, §§3730(a) and (b) actions.

Granted, other textual evidence cuts against this reading of §3731(b)(1). In particular, Congress used the phrase "brought under subsection (a) or (b) of section 3730" in §3731(d); this, it is argued, shows that Congress could have been similarly precise in §3731(b)(1) if it wished. In the context of this statute, however, that argument proves too much, since the same could be said of §3731(c), which all agree uses the phrase "action under section 3730" in more limited, and less precise, fashion. See *supra*, at 8. We do not doubt that Congress could have drafted §3731(b)(1) with more precision than it did, but the presence of the same inexact wording in §3731(c) means that the more precise language in §3731(d) casts little doubt on our reading of the statute.

\* \* \*

For the reasons we have discussed, the FCA's express limitations period does not apply to §3730(h) actions. The most closely analogous state statute of limitations therefore applies. Judge Wilkinson, in his dissenting opinion below, concluded that the most closely analogous state statute of limitations in this case is North Carolina's 3-year statute of limitations governing wrongful-discharge claims. See 367 F. 3d, at 261–262. The appropriate state

statute of limitations to borrow, however, is not within the scope of the question we granted certiorari to decide, and the Court of Appeals did not pass on the point. We therefore leave that issue for remand. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 04–169

———————

## GRAHAM COUNTY SOIL & WATER CONSERVATION DISTRICT, ET AL., PETITIONERS *v.* UNITED STATES EX REL. KAREN T. WILSON

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[June 20, 2005]

JUSTICE STEVENS, concurring in the judgment.

For the reasons stated in my dissenting opinion in *Dodd* v. *United States*, *ante*, at \_\_\_, I concur in the judgment.

# SUPREME COURT OF THE UNITED STATES

_____

No. 04–169

_____

GRAHAM COUNTY SOIL & WATER CONSERVATION DISTRICT, ET AL., PETITIONERS *v.* UNITED STATES EX REL. KAREN T. WILSON

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[June 20, 2005]

JUSTICE BREYER, with whom JUSTICE GINSBURG joins, dissenting.

As the Court points out, it is unusual to find a statute of limitations keyed not to the time of the plaintiff's injury, but to other related events. Still, I believe that Congress has written such a statute here, and we should respect its decision.

The language of the statute, 31 U. S. C. §3731(b)(1), is reasonably clear. It says that "[a] civil action *under section 3730* may not be brought . . . more than 6 years after the date on which the violation" of federal false claims law "is committed." (Emphasis added.) Section 3730 lists three kinds of civil actions, including a retaliation action under §3730(h). Thus, a retaliation action is a "civil action under section 3730," and §3731(b)(1)'s 6-year limitations period applies.

The Court tries to overcome the force of this syllogism with the help of two textual arguments. First, it points to the subsection that follows §3731(b)—§3731(c)—which says that "'[i]n any action brought under section 3730, the United States shall be required to prove all essential elements of the cause of action, including damages, by a preponderance of the evidence.'" See *ante*, at 8. The Court then reasons that, read in context, the phrase "ac-

tion brought under section 3730" could not refer to *all* the civil actions listed under §3730, for the United States is not ordinarily a party to private retaliation suits brought under §3730(h). *Ibid.* Rather, the phrase "action brought under section 3730" must refer only to the false claims actions listed in §§3730(a) and (b). *Ibid.* Thus, according to the Court, if in §3731(c), the phrase "action brought under section 3730" refers only to a *subset* of the actions listed under §3730, one can read the similar phrase in §3731(b)(1) to contain a similar limitation. *Ibid.*

The problem with this argument lies in its conclusion. The reason that §3731(c) may apply only to §§3730(a) and (b) actions has nothing to do with the phrase "action brought under section 3730." Rather, any limitation on §3731(c)'s application comes from different words, namely, "the United States." These latter words make clear not that the phrase "under section 3730" has a different *meaning* than in (b), but that (c) comes into play only in cases in which the United States is a party (and *only* in such cases, compare *ibid.*). Because it is these words—the subject of the subsection, "the United States"—that determines whether (c) has application in any given case, there is nothing in §3731(c) that would make it "reasonable," *ibid.,* to read the phrase "action under section 3730" *in section 3731(b)(1)* to apply, as the Court concludes, to only "two out of three actions under section 3730."

The subsections surrounding §§3731(b) and (c) further undermine the Court's extratextual limitation on "[a] civil action under section 3730." In §3731(a), Congress apparently used the phrase "under section 3730" to mean all three §3730 actions. §3731(a) (a "subpoena requiring the attendance of a witness at a trial or hearing conducted under section 3730 of this title may be served at any place in the United States"). And in §3731(d), Congress used the very words that the Court seeks to find in §3731(b), but that do not there exist—namely, the words "under

subsection (a) or (b) of section 3730"—when it meant to narrow a provision's compass to two out of the three §3730 causes of action. §3731(d) ("[A] final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements . . . shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730"); see also *ante*, at 12. The statutory context therefore shows that Congress did not intend for the phrase "[a] civil action under section 3730" to mean anything other than what it says.

Second, the Court points to language in §3731(b)(1) that specifies *when* the limitations period begins to run: "the date on which the violation" of the false claims provision, §3729, "is committed." See *ante*, at 5–7. It then points out that a retaliation action does not necessarily involve an *actual* false claims violation, because (it assumes) a retaliation plaintiff need only show "a *suspected* violation." *Ante*, at 7 (emphasis in original). Thus, adopting respondent's and the Government's reading, the Court reasons, would require reading some words into §3731(b)(1)—so that it would say "the [suspected or actual] violation"— which would distort the statute more than reading some other, different words into the statute—so that it would say "[a] civil action under section 3730[(a) or (b)]." *Ibid.*

The difficulty with the Court's choice of the latter linguistic addition is that the two sets of textual insertions— on the one hand "suspected or actual," on the other hand "(a) or (b)"—are not equivalent. Statutes of limitations, when referring to starting points, generally refer not to *actual* events, but to *alleged* events. Thus, a plaintiff's tort action is timely if he files it within, say, three years of the *alleged* negligently caused injury; a plaintiff's breach-of-contract action is timely if filed within, say, one year of the *alleged* breach. And a plaintiff who loses such an

action because the defendant shows, say, that there was no such injury or no such breach, has not, for that reason, brought the action outside the limitations period. Rather, the suit is still timely even though the violation remains nothing more than "alleged" after trial. Such a plaintiff has simply lost a timely filed action on the merits.

The provision before us is no different. Section 3731(b)(1)'s 6-year time clock begins to run on "the date on which the violation" of federal false claims law, §3729, "is committed." Thus, any §3730 plaintiff—even one bringing a false claims action under §3730(a) or §3730(b)—has six years from the moment of a suspected—that is, an un-proven—violation of the False Claims Act's antifraud provision. Thus, as naturally interpreted, the words "the date on which the violation . . . is committed" refer to the date on which the suspected violation occurs.

I recognize that there is a relevant distinction in this case. In the typical case (say, the tort or contract case) the plaintiff must ultimately prove all the relevant allegations. Here, the retaliation victim need not prove that her employer did in fact violate federal false claims law, but only that she believed that there was such a violation. See *ibid.* But that distinction does not make the difference. Given the clear link between claimed violations of federal false claims law and retaliation actions (the latter depend on the former) and given that triggering events in statutes of limitations implicitly mean *alleged* triggering events, §3731(b)(1) remains most naturally read as implicitly referring to alleged or suspected violations of federal false claims law. And at the very least, reading the statute in this way, especially in light of the other statutory indicators, see *supra*, at 1–3, does far less violence to §3731(b)(1)'s text than does the Court's addition of "(a) or (b)."

The Court's far stronger argument is not textual. It concerns the limitations provision's purpose. That pur-

pose, after all, includes providing victims of retaliation a reasonable time within which they can file an action to vindicate their rights. Cf. S. Rep. No. 99–345, p. 34 (1986) (addition of a retaliation cause of action intended "to halt companies . . . from using the threat of economic retaliation to silence 'whistleblowers'" and to "assure those who may be considering exposing fraud that they are legally protected from retaliatory acts"). How can we reconcile that purpose with a reading of the statute that, as a matter of logic, could allow the limitations period to begin to run, perhaps even to terminate, before the forbidden retaliation occurs? See *ante*, at 12.

The answer, in my view, is that Congress could have had a particular *qui tam*-related purpose in mind. That is, it could have intended to provide a fairly lengthy limitations period, namely six years from the time the false claims conduct occurs, applicable to *all* related actions, and then to put an end to all such litigation. This makes particular sense given the reasonable assumption that false claims and retaliation actions are likely to be litigated together. See, *e.g.,* App. 11–35 (respondent's complaint pursuing both *qui tam* and retaliation claims in same suit); *United States ex rel. Lujan* v. *Hughes Aircraft Co.*, 162 F. 3d 1027, 1030 (CA9 1998) (same).

Of course, as the Court emphasizes, such an unusual provision exacts a price, namely possible injury to an individual who suffers retaliation that comes late in the day. But apparently there is no such individual. Neither the Court nor petitioners have been able to find any actual example. See, *e.g.,* Tr. of Oral Arg. 5, 6; see also Brief for United States as *Amicus Curiae* 27–28 (United States is unaware of any such example). Nor have I.

By contrast, the Court's reading of the statute exacts a different, but certain, price. It substitutes for a fairly lengthy—and *uniform*—6-year limitations term, a crazy-quilt of limitations periods stitched together from the laws

of 51 jurisdictions which, in some instances, might require
a plaintiff to bring a retaliation claim within 90 days, six
months, or one year after the retaliation takes place. See,
*e.g.*, Ky. Rev. Stat. Ann. §61.103(2) (Lexis 2004) (90-day
limitations period for certain whistle-blower actions); Fla.
Stat. Ann. §112.3187(8)(a) (West Supp. 2005) (180-day
limitations period); *Hughes Aircraft Co.*, *supra*, at 1035
(California's 1-year limitations period for wrongful termi-
nation in violation of public policy applies to §3730(h)
action). Rather than shed crocodile tears for the imagined
plight of a nonexistent whistle-blower as petitioners ask
us to do, I would read the statute to do what the statute
says Congress wanted: to provide a relatively long, single,
uniform limitations period that, in practice, seems to
protect the many real potential plaintiffs, such as respon-
dent, who will otherwise find themselves shut out of court.
Such a reading also avoids the attendant practical difficul-
ties and uncertainties inherent in requiring federal courts
to borrow state statutes of limitations. See *Jones* v. *R. R.
Donnelley & Sons Co.*, 541 U. S. 369, 377–380, and n. 13
(2004) (discussing problems with this practice).

For these reasons, I respectfully dissent.