**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA, ex rel.,

MICHAEL M. MEYER; PATRICIA J. SZERLIP,

        *Plaintiffs-Appellants,*

        v.

HORIZON HEALTH CORPORATION;
SUMMIT MEDICAL CENTER;
SUKHDEEP GREWAL, M.D.,

        *Defendants-Appellees.*

No. 06-17084

D.C. No.
CV-00-01303-SBA

OPINION

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
January 13, 2009—San Francisco, California

Filed May 14, 2009

Before: Myron H. Bright,* Stephen Reinhardt, and A.
Wallace Tashima, Circuit Judges.

Opinion by Judge Myron H. Bright;
Dissent by Judge Reinhardt

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

## COUNSEL

Sarah S. Wright, San Rafael, California, and John A. McGuinn, San Francisco, California, for the plaintiffs-appellants.

Thomas M. Brown, Kenneth P. White, George P. Schiavelli, Teresa Cespedes Ellis, and Amber Finch, Los Angeles, California, for defendant-appellee Horizon Health Corporation.

Gregory M. Luce, Washington, D.C., and Shawn Hanson and Tracy M. Strong, San Francisco, California, for defendant-appellee Summit Medical Center.

Robert R. Moore and Michael J. Betz, San Francisco, California, for defendant-appellee Sukhdeep Grewal, M.D.

**OPINION**

BRIGHT, Circuit Judge:

In this appeal, qui tam relators Michael M. Meyer and Patricia J. Szerlip contend that the district court erred by granting a motion to dismiss for lack of subject-matter jurisdiction brought by Horizon Health Corporation, Summit Medical Center, and Dr. Sukhdeep Grewal (collectively "appellees"). The principal issues on appeal relate to whether relators' fraud allegations are based on a public disclosure, and, if so, whether the relators were the original source of those allegations. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

FACTS AND PROCEDURAL HISTORY

In 2000, relators Meyer, Szerlip, and Vicki Weatherford sued appellees, asserting claims under the qui tam provisions of the False Claims Act, 31 U.S.C. §§ 3729-3733 ("the Act"). Meyer and Szerlip were psychiatric nurses employed by Summit; Weatherford was employed by Horizon as the "Senior Bridges" program director. The Senior Bridges program was a geropsychiatric unit managed by Horizon at a facility owned by Summit.

The gravamen of relators' allegations assert that appellees fraudulently billed Medicare for patient services. Specifically, relators contend that appellees admitted patients to the Senior Bridges program despite knowing that those patients, who suffered from dementia, could not benefit from the program. Appellees received a considerably larger daily Medicare reimbursement for a patient in the Senior Bridges program ($1,830) than for a patient in the regular "medical/surgical unit" ($1,085).

After a long delay in its decision, the government in May 2004 declined to intervene. Relators then filed their First

Amended Complaint ("FAC") against appellees in September 2004. Appellees moved to dismiss the FAC, asserting that relators failed to allege the fraud with particularity. The district court granted the motion to dismiss, but permitted relators to file a Second Amended Complaint ("SAC"), which they filed in May 2005. Appellees moved to dismiss the SAC under Fed. R. Civ. P. 9(b) and 12(b)(6). In September 2005, the district court granted appellees' motion, dismissed the complaint, and granted relators leave to file a Third Amended Complaint ("TAC"). After relators filed the TAC, appellees moved to dismiss the TAC under Fed. R. Civ. P. 9(b) and 12(b)(6), which the district court denied.

In March 2006, relator Weatherford withdrew from the suit. In August 2006, appellees moved to dismiss the TAC under Fed. R. Civ. P. 12(b)(1), arguing that the district court lacked subject-matter jurisdiction because the allegations of the remaining relators, Meyer and Szerlip, had been publicly disclosed by Weatherford's 1999 state-court wrongful-termination suit and they were not original sources of the allegations. The district court granted the motion, dismissed the TAC, and this appeal follows.

## DISCUSSION

### I. The district court did not err by granting appellees' motion to dismiss.

Relators contend first that the district court improperly granted appellees' 12(b)(1) motion to dismiss the TAC. Specifically, relators challenge the district court's determinations that the TAC was based on prior public disclosure and that the relators did not qualify as original sources of the allegations. We review a district court's conclusion that it lacks subject-matter jurisdiction de novo and the findings of fact relevant to that determination for clear error. *See A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1242-43 (9th Cir. 2000).

**[1]** The Act prohibits false or fraudulent claims for payment to the United States, 31 U.S.C. § 3729(a), and authorizes civil actions to remedy such fraud to be brought by the Attorney General, § 3730(a), or by private individuals in the government's name, § 3730(b)(1). But the Act provides that

> [n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

§ 3730(e)(4)(A).

**[2]** The public-disclosure bar in § 3730(e)(4)(A) sets up a two-tiered inquiry. First, "we must determine whether there has been a prior 'public disclosure' of the 'allegations or transactions' underlying the qui tam suit." *A-1 Ambulance Serv.*, 202 F.3d at 1243. "If and only if there has been such a public disclosure, we next must inquire whether the relator is an 'original source' within the meaning of § 3730(e)(4)(B)." *Id.* Relators, as the qui tam plaintiffs, bear the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. *United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1018 (9th Cir. 1999). We now turn to this analysis.

## A. Public disclosure

Relators filed this suit in April 2000 after very similar allegations were publicly disclosed in a wrongful-termination suit that Weatherford filed in state court in October 1999. Accordingly, the district court dismissed relators' suit, holding that the Weatherford suit was a public disclosure and that relators'

qui tam allegations "plainly share a substantial identity with the allegations disclosed through the *Weatherford* complaint filed in state court in 1999." Whether a particular disclosure "triggers the jurisdictional bar of § 3730(e)(4)(A) is a mixed question of law and fact, which we review de novo." *A-1 Ambulance Serv.*, 202 F.3d at 1243.

The public-disclosure question potentially implicates two distinct but related determinations. First, "we must decide whether the public disclosure originated in one of the sources enumerated in the statute." *Id.* When a public disclosure originates in one of these sources, we must then determine "whether the content of the disclosure consisted of the 'allegations or transactions' giving rise to the relator's claim, as opposed to 'mere information.' " *Id.* (quoting *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1473 (9th Cir. 1996)). For a qui tam suit to be "based upon" a prior public disclosure, § 3730(e)(4)(A), the publicly disclosed facts need not be identical with, but only substantially similar to, the relator's allegations. *See United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001); *see also United States ex rel. Biddle v. Bd. of Trustees of Leland Stanford, Jr. Univ.*, 161 F.3d 533, 537 (9th Cir. 1998) ("[A] claim is 'based upon' public disclosure when the claim repeats allegations that have already been disclosed to the public.").

Here, relators concede that (1) Weatherford filed her suit nearly six months before they filed this suit; (2) the Weatherford suit contains similar fraud allegations; and (3) a lawsuit can publicly disclose allegations or transactions under the Act. Relators argue only that they "made the first public disclosure when they presented evidence to the government through their counsel to Medicare fraud investigator Steven M. Lack, on July 6, 1999, fully three months before the Weatherford lawsuit." In other words, their suit is not subject

to the Act's public-disclosure bar because they "were the first to disclose the Medicare fraud."[1] We reject this contention.

Even accepting relators' assertion that they disclosed the allegations of Medicare fraud to the government before Weatherford filed her suit, we reject relators' argument because it fails the first prong of the two-part test described in *A-1 Ambulance Serv.*[2]

[3] Public disclosure may occur in only three categories of fora: (1) in a "criminal, civil, or administrative hearing"; (2) in a "congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation"; or (3) in the "news media." § 3730(e)(4)(A); *A-1 Ambulance Serv.*, 202 F.3d at 1243. Relators' apparent argument is that they made the first public disclosure by informing the government of the allegations during a meeting with Investigator Lack. But relators offer no argument (and cite no authority) in support of their contention that such a private disclosure to a government employee is a public disclosure, as the Act defines the term.

[4] In any event, relators' argument, which asks us to read into the Act a fourth forum for a public disclosure, is fore-

---

[1]In their reply brief, relators argue additionally that "[t]he Weatherford action is not a prior public disclosure because this action picks up from where the Weatherford action left off." But this new theory, first raised in relators' reply brief, is waived. *See Alcan Elec. & Eng'g, Inc.*, 197 F.3d at 1020 (stating that arguments raised on appeal for the first time in a reply brief are waived).

[2]Appellees brought a factual, as opposed to facial, motion to dismiss for lack of subject-matter jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (explaining the distinction). Accordingly, we "need not presume the truthfulness of the plaintiffs' allegations" and may "look beyond the complaint . . . without having to convert the motion into one for summary judgment." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Here, however, we accept relators' version of the facts as true for purpose of their public-disclosure argument because, even under their version, relators' argument would fail.

closed by caselaw. For example, this court has held that "information that was 'disclosed in private' " is not a public disclosure under the Act.**³** *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1518 (9th Cir. 1995) (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante v. Prudential Ins. Co.*, 944 F.2d 1149, 1161 (3d Cir. 1991)), *vacated on other grounds by* 520 U.S. 939 (1997); *see also United States ex rel. Devlin v. California*, 84 F.3d 358, 360 (9th Cir. 1996) (holding that, although a newspaper article was a public disclosure, a relator's private disclosure to a reporter in advance of publication was not a public disclosure). This rule applies even when the private disclosure is made to a government employee. *See Hughes Aircraft*, 63 F.3d at 1518. Moreover, a public disclosure is restricted to information that is actually made public as opposed to material that is " 'only theoretically available upon the public's request.' " *Id.* at 1519-20 (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 652-53 (D.C. Cir. 1994)). Thus, even when the government has the information, it is not publicly disclosed under the Act until it is actually disclosed to the public. *See id.*

   **[5]** Accordingly, even if relators disclosed the alleged Medicare fraud to Investigator Lack before Weatherford filed her

---

**³**We also note that the majority of circuits that have considered the issue have concluded that disclosure to the government, without more, is not a public disclosure under § 3730(e)(4)(A). *See, e.g.*, *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 728 (1st Cir. 2007) ("In our view, a 'public disclosure' requires that there be some act of disclosure to the public outside of the government."); *Kennard v. Comstock Res., Inc.*, 363 F.3d 1039, 1043 (10th Cir. 2004) (holding that the public-disclosure requirement "clearly contemplates that the information be in the public domain in some capacity and the Government is not the equivalent of the public domain"); *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1499-1500 (11th Cir. 1991) (stating that a report submitted to government officials was not a public disclosure under the Act). *But see United States v. Bank of Farmington*, 166 F.3d 853, 861 (7th Cir. 1999) ("Disclosure to an official authorized to act for or to represent the community on behalf of government can be understood as public disclosure.").

suit, such a disclosure would not be a public disclosure within the meaning of the Act. And because it would not qualify as a public disclosure, relators' argument that they first publicly disclosed the allegations must be rejected.

## B.   Original Source

**[6]** Because the Weatherford suit publicly disclosed the allegations in relators' suit, we must next consider whether relators are original sources under the Act. *See* § 3730(e)(4)(A), (B); *A-1 Ambulance Serv.*, 202 F.3d at 1243. An original source is an individual who has "direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." § 3730(e)(4)(B); *see also Rockwell Int'l Corp. v. United States*, 127 S. Ct. 1397, 1405 (2007). This court has held that to be an original source, a relator "must satisfy an additional requirement under § 3730(e)(4)(A) that is not in the statute *in haec verba*," namely that he " 'had a hand in the public disclosure of the allegations that are a part of [his] suit.' " *United States ex rel. Zaretsky v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006) (alteration in original) (quoting *Wang v. FMC Corp.*, 975 F.2d 1412, 1417 (9th Cir. 1992)). Thus, post-*Wang*, the requirements for the original-source exception are as follows:

> To qualify as an original source, a relator must show that he or she [1] has direct and independent knowledge of the information on which the allegations are based, [2] voluntarily provided the information to the government before filing his or her qui tam action, and [3] had a hand in the public disclosure of allegations that are a part of . . . [the] suit.

*United States ex rel. Lujan v. Hughes Aircraft Co.*, 162 F.3d 1027, 1033 (9th Cir. 1998) (internal quotation marks omitted).

Relators contend that the district court erred by concluding that they were not original sources under the Act. We disagree.

Initially, we note a potentially fatal defect with relators' original-source argument. The pages of relators' opening brief do not easily reveal why the district court allegedly erred in concluding that relators were not original sources. As discussed above, relators argue that there was no prior public disclosure of the allegations and assert that the conversations with Investigator Lack were a public disclosure. But in the course of making that short argument,[4] they also baldly conclude that they "meet the Ninth Circuit's test for 'original sources.' " An appellant's brief "must contain . . . appellant's contentions and *the reasons for them*, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9) (emphasis added). This court deems issues unsupported by argument to be abandoned. *See Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 467 (9th Cir. 1990). The exegesis in relators' reply brief is marginally clearer, but the reply brief is ordinarily not the place for such an analysis in the first instance on appeal. *See Alcan Elec. & Eng'g, Inc.*, 197 F.3d at 1020 (holding that such arguments are waived).

**[7]** In any event, we conclude that the district court did not err by determining that relators were not original sources. To establish the proposition that they were original sources, relators must show that they possessed "direct and independent knowledge of the information" on which their allegations are based. *See* § 3730(e)(4)(B); *Rockwell*, 127 S. Ct. at 1407-08. To show direct knowledge, "the relator must show that he had firsthand knowledge of the alleged fraud, and that he obtained this knowledge through his own labor unmediated by any-

---

[4]Relators' opening brief dedicates only three pages to public disclosure and the original-source exception. Relators' reply brief, on the other hand, dedicates 24 of its 25 pages to these issues.

thing else." *Alcan Elec. & Eng'g, Inc.*, 197 F.3d at 1020 (internal quotation marks omitted). A relator has independent knowledge when he knows about the allegations before that information is publicly disclosed. *Id.* ("Harshman's knowledge was 'independent' because it preceded the public disclosure in the [earlier] complaint.").

Here, the TAC alleges fraud solely regarding the treatment and billing for the patient referred to as "Patient A." Thus, relators must have direct and independent knowledge of the treatment and billing of Patient A. The district court found that relators had "no such direct and independent knowledge." We conclude that the record supports the district court.

[8] The TAC contains no allegation that relators had direct and independent knowledge of appellees' alleged attempt to defraud the government with respect to Patient A. *See Rockwell*, 127 S. Ct. at 1408-09 (stating that courts examine the allegations in the amended complaint to determine whether a relator qualifies as an original source under the Act). Similarly, relators' declarations filed in opposition to appellees' motion to dismiss contain no assertion that relators had direct and independent knowledge of appellees' allegedly fraudulent billing for Patient A's services.[5] The TAC and declarations reveal, at most, that Szerlip knew about alleged fraud, not that she had direct and independent knowledge of the alleged fraud. This is an important distinction. The district court did not clearly err by determining that relators lacked the requisite direct and independent knowledge of the alleged fraud to qualify as original sources.

---

[5]More than one week after briefing on appellees' motion to dismiss closed, relators filed an "Ex Parte Application for Leave to File Additional Documents," which included new declarations of relators and relators' counsel. As noted in Section III, *infra*, relators have proffered no argument as to why we should disturb the district court's discretionary decision to refuse to accept these untimely materials, and, therefore, we limit our review to the TAC and the motion papers that the district court did accept.

We note additionally that relators have not established another prerequisite to be an original source: that they "had a hand in the public disclosure of allegations that are a part of . . . [the] suit." *Wang*, 975 F.2d at 1418; *see also Johnson Controls*, 457 F.3d at 1018 (stating that relators must "play a role in the public disclosure at issue"). The district court determined that relators did not have a hand in the Weatherford suit, which publicly disclosed the allegations, because they were not parties to the Weatherford suit. But we need not determine whether a relator must actually be a party to a prior lawsuit that publicly discloses the allegations to "have a hand in" the public disclosure. It is sufficient to say that neither the TAC nor relators' declarations filed in opposition to appellees' motion to dismiss the TAC include any assertion that relators had a hand in the Weatherford suit's public disclosure of the allegations.

The district court did not err by determining from the record before it that relators neither had direct and independent knowledge of the alleged fraudulent practices surrounding Patient A nor had a hand in the public disclosure of those allegations.

## II.   Relators have withdrawn their challenge to the SAC.

Relators contend in their opening brief that the district court erred by concluding that the SAC failed to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) and dismissing the SAC on that basis. Appellees argue that relators cannot challenge the district court's dismissal of the SAC because relators filed the TAC, which supersedes and waives any error involving the SAC. In their reply brief, relators concede the issue, acknowledging that "by filing the TAC, they cannot challenge the district court's dismissal of their SAC." Because relators have expressly withdrawn this issue, we do not consider it.

### III. Appellees' motion to strike.

Appellees move to "(1) strike pages five through 23 of [relators'] Reply Brief, which contain new legal argument and record citations and, (2) strike [relators'] Supplemental Excerpts of Record because the documents contained therein are not part of the district court record."

**[9]** As noted throughout this opinion, we have not relied on the arguments that relators first raised in their reply brief. Appellees also assert that we should not consider the supplemental declarations filed with the Ex Parte Application for Leave to File Additional Evidence. The district court denied relators' application to file these supplemental declarations, noting that they were untimely filed as a result of relators' "deliberate choice . . . not to respond fully to the Motion [to dismiss]" and would amount to an "inequitable . . . surreply." Relators have proffered no argument regarding why the district court abused its discretion by refusing to accept these untimely materials. But because our holding does not rely on either the arguments that relators first raised in their reply brief or the supplemental declarations, we deny appellees' motion to strike as moot.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's dismissal of the TAC with prejudice. We also **DENY** appellees' motion to strike certain matters sought to be presented by relators. Each party shall pay its own costs on this appeal.

---

REINHARDT, Circuit Judge, dissenting:

I agree with the majority that the *Weatherford* suit constituted a public disclosure, thereby triggering the requirement that the relators be "original sources" in order to proceed with

their qui tam suit. I disagree, however, with the majority's assessment of the record, and conclude that Szerlip has met her burden of showing "original source" status, thereby establishing jurisdiction, by a preponderance of the evidence.[1]

As the majority correctly states, a qui tam relator is an "original source" of the action if she "[1] has direct and independent knowledge of the information on which the allegations are based and [2] has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B). In addition, our circuit requires that the relator has "had a hand in the public disclosure of allegations that are a part of . . . [the] suit." *United States ex. rel. Devlin v. State of California*, 84 F.3d 358, 360 n.3 (9th Cir. 1996) (internal quotations omitted). This third requirement is satisfied, however, where the relator discloses her allegations to the government before similar allegations are publicly disclosed. *See United States ex rel. Lujan v. Hughes Aircraft Co.*, 162 F.3d 1027, 1034 (9th Cir. 1998). Doing so is considered "indirectly" having a hand in the public disclosure. *See id.*

The evidence shows by a preponderance of the evidence that Szerlip satisfies both the second and third requirements of "original source" status because she disclosed her allegations to the government before filing this action and therefore before the public disclosure in the *Weatherford* suit. Specifically, Szerlip's attorney filed a declaration stating that Szerlip had given her documents about the alleged fraud, including information about "Patient A," which she submitted to a government Medicare fraud investigator at a meeting on July 6, 1999. Because the Weatherford suit was not filed until October 5, 1999, Szerlip's disclosure to the government through her attorney predated the filing of that suit. The attorney's declaration includes a copy of a FedEx bill showing that an

---

[1]Because I conclude that Szerlip meets the original source requirement, I do not reach the question whether Meyer does as well.

agent of the Office of Inspector General of the United States Department of Health & Human Services sent her a package on July 7, 1999, corroborating the attorney's statement that the agent mailed her back all the documents the day after their meeting. Nothing in the record contradicts this evidence.[2]

Szerlip also satisfies the remaining requirement for "original source" status: that she possess "direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. § 3730(e)(4)(B). To have such "direct and independent knowledge" of the fraud, a relator must show that she had "firsthand knowledge of the alleged fraud," which she obtained "through [her] own labor unmediated by anything else," and through channels independent of the public disclosure. *United States v. Alcan Electrical & Engineering, Inc.*, 197 F.3d 1014, 1020 (9th Cir. 1999) (internal quotation marks and citations omitted). Here, the complaint and its exhibits show that Szerlip was Patient A's nurse therapist and that she observed that Patient A was kept in the Senior Bridges Program although she was not improving and did not want to be there. Szerlip's declaration also states that she witnessed Medicare fraud — including the admission of patients who were unable to benefit from the program, false entries regarding Dr. Grewal's visits to patients, and the extension of patients' stays in the unit beyond that which was appropriate — and alerted management to them before resigning. Again, nothing in the record contradicts these statements.

These documents show that, much like the other relators whom this court has found to have direct and independent knowledge, Szerlip encountered the alleged fraud — the fraudulent admission and treatment practices — through her

---

[2]The defendants argue that an application for an order extending time to intervene filed by the United States government in this case indicates that the relators met with government agents in June 2000. That application, however, does not state that it was the first time that government agents met with the relators or their attorney.

own experience as a nurse therapist, and not through the public disclosure or other secondary sources. *C.f., e.g., United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 970 (9th Cir. 1999) (relators observed improper billing and nonproductive labor during their work as a technician and an analyst); *Wang v. FMC Corp.*, 975 F.2d 1412, 1417 (9th Cir. 1992)(engineer-relator worked on the allegedly defective product). That she did not have direct access to the fraudulent invoices does not matter, because "to qualify as an original source, a relator does not have to have personal knowledge of all elements of a cause of action." *Minnesota Association of Nurse Anesthetists v. Allina Health System Corp.*, 276 F.3d 1032, 1050 (8th Cir. 2002). The direct knowledge of her unit's fraudulent admissions and treatment practices is sufficient to raise the inference that the government was being billed fraudulently. *C.f. id.* (holding that the nurses' direct knowledge of operating room practices, despite their lack of access to billing records, is sufficient to satisfy original source status).

Because there are uncontradicted statements in the record showing that Szerlip had direct and independent knowledge of the alleged fraud and that she revealed her knowledge to the government before the *Weatherford* suit, I would conclude that the district court clearly erred when it determined that Szerlip has not alleged facts sufficient to demonstrate that she satisfies any of the criteria for original source status, and would hold instead that Szerlip has met her burden of establishing subject-matter jurisdiction by a preponderance of the evidence. *See United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1018 (9th Cir. 1999). Although the majority would require Szerlip to allege her original source status more clearly in the complaint or submit more documents in its support, I do not think that any more is required for a preponderance of the evidence than uncontested facts showing that she met all three prongs of the inquiry. I would therefore reverse

the district court and remand in order to allow the proceedings to continue.[3]

---

[3]I conclude that Szerlip did not waive the "original source" argument in the opening brief, but raised it sufficiently when she argued that she had first hand knowledge of the fraud and that her attorney met with a government agent prior to the filing of the *Weatherford* action.